UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

MACKSUEL ALVES DA SILVA,

        Petitioner,

        v.

PAMELA BONDI el al.,

        Respondents.

25-CV-1220-LJV
DECISION & ORDER

---

In October 2016, the petitioner—Macksuel Alves da Silva—was apprehended in Texas as a noncitizen present in the United States unlawfully. Docket Item 1 at ¶ 13; Docket Item 22-1 at 2. Because he was caught within 100 miles of the border and 14 days of entry, he was detained under 8 U.S.C. § 1225(b)(1)(A). *See* Docket Item 22-1 at 2.

Alves da Silva was given what is known as a "credible fear interview" under section 1225(b)(1) and was found to have a credible fear of persecution or torture if returned to his native country, Brazil. *See id.* At that point, the government released Alves da Silva on bond and allowed him to live freely in the country for the next nine years—until November 4, 2025—when he was taken back into custody. *See id.* at 3-4. The government claims that he now is subject to mandatory detention under section 1225(b)(1)(A) as if its decision to release him on bond in 2016 had never happened. This Court disagrees.

As the Supreme Court has explained, section "1226 applies to [noncitizens] already present in the United States." *Jennings v. Rodriguez*, 583 U.S. 281, 303

(2018).  When the respondents re-detained Alves da Silva in 2025, he had been living in the United States for nine years.  As the government concedes, he "was never paroled," see Docket Item 22-1 at 7, and he therefore was not subject to the "entry fiction" of parole, see *Campbell v. Almodovar*, 2025 WL 3538351, at *8 (S.D.N.Y. Dec. 10, 2025).  In other words, Alves da Silva was unquestionably "present" and allowed to live in the United States for almost a decade.

This Court previously has held that even noncitizens who remain in the country following expiration of parole are "present" in the country and are therefore detained under 8 U.S.C. § 1226, not section 1225.  *Cabrera Martinez v. Marich*, --- F.Supp.3d ---, 2025 WL 3771228 (W.D.N.Y. Dec. 31, 2025).  Alves da Silva's situation is even more compelling:  He was never subject to the "entry fiction" of parole; rather, from the time he entered the country, he was "present" here.  Indeed, in another similar case with a petitioner who had initially been detained under section 1225(b)(1)(A) but subsequently was released, the government—while preserving its objection and reserving all rights—conceded that under *Cabrera Martinez*, the petitioner was entitled to a bond hearing.  *See* Response to Show Cause Order at 1-2, *Guaman Pinguil v. Rhoney*, No. 25-cv-1507 (W.D.N.Y. Jan. 8, 2026), Docket Item 8; *see also* Letter at 1, *Guaman Pinguil v. Rhoney*, No. 25-cv-1507 (W.D.N.Y. Jan. 6, 2026), Docket Item 4 (explaining that petitioner "was encountered within 14 days of unlawfully entering the United States and 100 miles of the border, subjecting him to expedited removal under 8 U.S.C. § 1225(b)(1)(A)(iii)).  The government offers no reason why the Court should not reach the same conclusion here: that Alves da Silva is entitled to a bond hearing.

As it did in *Cabrera Martinez*, the government "relies on several cases that stand for the well-established proposition that noncitizens on parole remain legally at the border." *Cabrera Martinez*, 2025 WL 3771228, at *8 (citing *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139 (2020); *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 215 (1953)); *see* Docket Item 22-1 at 4-6.  But those cases do not speak to a situation like this one where, as noted above, the petitioner was "never paroled," *see* Docket Item 22-1 at 7, was allowed to live here *not* on parole, and was detained while in the country rather than while attempting to *re-enter*.

It is true, as the government observes, that *Cabrera Martinez* involved section 1225(b)(2) and this case involves section 1225(b)(1).  *See* Docket Item 22-1 at 7.  But that does not change the fact that, like the petitioner in *Cabrera Martinez*, Alves da Silva was present inside the United States—and had been for years—when he was apprehended.  The government offers no reason, nor does this Court see any, why the same logic should not apply here; if anything, as explained above, Alves da Silva has a stronger argument.

The government also relies on a 2019 decision of the Attorney General, *Matter of M-S-*, 27 I&N Dec. 509 (A.G. 2019), which held that noncitizens "who are originally placed in expedited proceedings and then transferred to full proceedings after establishing a credible fear . . . remain ineligible for bond upon transfer," *id.* at 515; *see* Docket Item 22-1 at 5-7.  The Attorney General's decision in *M-S-* overruled a prior Board of Immigration Appeals decision, *Matter of X-K-*, 23 I&N Dec. 731 (B.I.A. 2005), which held that certain noncitizens in removal proceedings who had received a positive credible fear determination under section 1225 were no longer subject to mandatory

3

detention, *see M-S-*, 27 I&N Dec. at 510.  But the government does not explain why notwithstanding the Attorney General's decision in 2019, it continued to allow Alves da Silva to remain released on bond for more than five years.  As this Court has observed previously, the government cannot now "change[] the rules by fiat, appl[y] them retroactively, and pull[] the rug out from [the petitioner]."  *See Mata Velasquez v. Kurzdorfer*, 794 F. Supp. 3d 128, 154 (W.D.N.Y. 2025).

Moreover, *M-S-* does not speak to the situation here where the petitioner was allowed to remain present in the United States for years before being re-detained.  And even if it did, this Court "'must exercise independent judgment in determining the meaning of statutory provisions' rather than deferring to agency interpretations when provisions are ambiguous."  *Cabrera Martinez*, 2025 WL 3771228, at *12 (quoting *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 394 (2024)).

Accordingly, for the reasons explained above and in *Cabrera Martinez*, this Court GRANTS the petition, Docket Item 1, and ORDERS the respondents to provide the petitioner with an individualized bond hearing before an immigration judge **within seven calendar days of the date of this order**.  At that hearing, the government shall bear the burden to demonstrate, by clear and convincing evidence, that the petitioner is a danger to the community or a flight risk.  At that bond hearing, the immigration judge must consider non-bond alternatives to detention or, if setting a bond, the petitioner's ability to pay.  If the respondents fail to provide such a hearing within seven calendar days, they shall immediately release the petitioner.  The respondents' motion to dismiss, Docket Item 22, is DENIED.

SO ORDERED.

Dated:   January 25, 2026
         Buffalo, New York

                                        */s/ Lawrence J. Vilardo*
                                        LAWRENCE J. VILARDO
                                        UNITED STATES DISTRICT JUDGE